United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DENISE STRIPLING**, <br> Plaintiff, <br> v. <br> **REGENTS OF THE UNIVERSITY OF CALIFORNIA, ET AL.**, <br> Defendants. | Case No. 14-cv-02606-YGR <br><br> **ORDER ON MOTION TO DISMISS** |

Plaintiff Denise Stripling ("Stripling") brings this civil action against Defendants Regents of the University of California ("Regents"), University of California San Francisco ("UCSF"), John Plotts, Michael Bade, and Craig Peterson ("individual UCSF defendants") for claims arising generally from her employment with the Regents and ultimate termination. Plaintiff in a *pro se* capacity alleges twenty-six causes of action and seeks damages.

The Regents have filed a motion to dismiss on the grounds that Stripling has failed to state a claim for myriad reasons, chiefly that the Eleventh Amendment bars plaintiff's claims. (Dkt. No. 11 ("Mot.").) Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** the motion to dismiss, and provides leave to amend with respect to those claims for which the Court cannot, at this juncture, discern an immediate bar.[1]

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court determined this motion suitable for decision without oral argument.

**BACKGROUND**

The first amended complaint ("FAC") filed in this action spans 72 pages. (Dkt. No. 9.) The Court recounts the salient allegations here:

As of March 2008, Stripling was an Associate Project Manager at UCSF. She received positive performance evaluations, but in 2009 began to feel that her supervisor, defendant Peterson, was treating her differently based on race. (FAC ¶ 26.) In July 2009, Stripling called UCSF's Human Resources representative and expressed her concerns regarding racially-motivated treatment by defendant Peterson. (*Id.* ¶ 27.) In August of the same year, Stripling met with defendant Bade (Peterson's supervisor) to express the same concerns. (*Id.* ¶ 28.) Defendant Bade responded that "there was nothing to be concerned about." (*Id.* ¶ 28.) Over the next year, plaintiff's job performance remained outstanding and she received acknowledgement and awards for her service. (*Id.* ¶¶ 31, 32, 33, 34.) In late 2010, plaintiff was chosen to be a participant in UC's Leadership Institute. (*Id.* ¶ 35.) Despite the deadline having passed, defendant Peterson asked her to "put something together" to "give to me" to pass to the committee. (*Id.*) Only later did plaintiff discover that the other project managers in defendant Peterson's group, who were white or Asian, had been nominated "weeks ago." (*Id.* ¶ 35.) After discovering this, plaintiff again discussed with UCSF's Human Resources representative that she felt she had been treated differently than the other project managers in her group. (*Id.* ¶ 36.)

In December 2010, Peterson directed plaintiff to award twelve Information Technology Services (ITS) Wireless Infrastructure Projects to Eagle Enterprises, Inc. (*Id.* ¶ 37.) Allegedly, the owner of Eagle Enterprises is a personal friend of defendant Peterson. (*Id.*) Thereafter, Peterson directed plaintiff to engage Eagle Enterprise in various activities that would not have customarily required its participation. For example, plaintiff was asked to invite Eagle Enterprises to a kick-off meeting for the ITS projects (*Id.* ¶ 38), which Eagle Enterprises attended and then billed for its costs of attendance. (*Id.* ¶ 39) After this meeting, another manager asked plaintiff to remove Eagle Enterprises from the ITS project. (*Id.* ¶ 40.) The suggestion that Eagle Enterprises be removed from the project was met with disapproval: when plaintiff relayed the request to Peterson, he raised his voice and asked, "What did you do?" (*Id.* ¶¶ 41, 42.)

In February 2011, plaintiff expressed concerns that few professional services contracts under $100,000 were being awarded to women and minorities. (*Id*. ¶ 43.) Peterson stated that it was "perfectly legal" to award such contracts to white-owned businesses, to which plaintiff responded that "it may be legal, but it is ethically and socially wrong." (*Id*. ¶ 43.) Peterson then characterized plaintiff as an "angry black woman." (*Id*.) Plaintiff then said that Peterson was engaging in "bid steering" and walked out of the meeting. (*Id*.)

In April 2011, plaintiff informed Eagle Enterprises that it would not receive the contract associated with the ITS projects, and that although the contracts were for less than $100,000, they would be put out to bid. (*Id*. ¶ 44.) Peterson later directed plaintiff to award the contract to Eagle Enterprises, but plaintiff refused.

In May 2011, plaintiff sent an email to Bade, Peterson, the UCSF Human Resources representative, and General Counsel David Bergquist explaining that the relationship between Peterson and Eagle Enterprises posed a conflict of interest. (*Id*. ¶ 49.) No one responded.

In July 2011, plaintiff requested a meeting with UCSF's Human Resources representative to discuss her intent to file an internal whistleblower complaint and a complaint concerning perceived, continued disparate treatment, as well as Peterson's retaliatory behavior. (*Id*. ¶ 51.) The UCSF representative never responded. (*Id*.)

Plaintiff's July 2011 performance evaluation was her first negative review in her time at UCSF. (*See id*. ¶ 52.) Peterson allegedly impugned plaintiff's reputation and integrity, and threatened her with termination for her recalcitrance in awarding Eagle Enterprises any contract. (*Id*.) Soon thereafter, Peterson served plaintiff with a "Letter of Investigatory Hearing," which did not contain any information regarding the subject matter of the meeting. (*Id*. ¶ 53.) Plaintiff sought assistance at the University's Employment Assistance Program (*Id*. ¶ 54), and attended the meeting.

On August 17, 2011, plaintiff filed a charge of employment discrimination, conflict of interest, and retaliation. (*Id*. ¶ 56.) Between August 20, 2011 to January 16, 2012, Peterson sent plaintiff a deluge of work directives that were allegedly unjustified and that increased her workload significantly. (*Id*. ¶ 57.) Plaintiff alleges that such treatment was not targeted at non-

3

1    African American employees.  (*Id*.)

2          In September 2011, Peterson served plaintiff a "Letter of Warning."  (*Id*. ¶ 58.)  Following
3    layoffs of three other project managers, plaintiff's workload increased threefold, and she was
4    thereafter admitted to the hospital for anxiety and stress.  (*Id*. ¶¶ 59, 60.)  Plaintiff's request for
5    additional managerial support was met with another "Notice of Investigatory Meeting."  (*Id*. ¶¶ 61,
6    62.)  Plaintiff attended that meeting and again filed a complaint alleging racial discrimination, a
7    pattern of harassment, disparate treatment, uneven discipline, and retaliation.  (*Id*. ¶ 64.)  Peterson
8    then began to increase her workload, and made disparaging remarks about plaintiff to customers
9    and coworkers.  (*Id*. ¶¶ 66, 67.)  In November 2011, plaintiff filed a third charge of employment
10   discrimination.  (*Id*. ¶ 69.)

11         Starting in December 2012, plaintiff began to collect data in an effort to document
12   favoritism of white male contractors in contract awards under $100,000.  (*Id*. ¶ 70.)  She informed
13   the investigator about these statistics during the course of a meeting concerning her third
14   complaint of discrimination.  (*Id*. ¶ 71.)  In January 2012, plaintiff filed a California Public
15   Records Act request relating to the evidence to substantiate her whistleblower allegations and her
16   claims of discrimination, harassment, and retaliation.  (*Id*. ¶ 72.)  Thereafter, plaintiff alerted
17   UCSF administrators of her intention to file further complaints relating to conflict of interest and
18   racial discrimination.  (*Id*. ¶ 74.)

19         While plaintiff was away from work on vacation, plaintiff alleges on information and
20   belief that Peterson accessed her computer and found the reports she was collecting.  (*Id*. ¶ 76.)
21   When she returned to work, on February 13, 2012, plaintiff undertook to enter the data in the
22   University of California's website for reporting whistleblowing activities. (*Id*. ¶ 77.)  Several
23   hours later, she was called into a meeting and handed a Notice of Intent to Dismiss.  (*Id*. ¶ 78.)
24   She was then escorted from UCSF's premises.  (*Id*.)  Thereafter, plaintiff attended a *Skelly* hearing
25   and disputed the bases for her dismissal.  (*Id*. ¶ 79.)

26         In March 2012, plaintiff received her Human Resources Discrimination Investigatory
27   Findings Report, which found no discrimination, conflict of interest, harassment, or retaliation.
28   (*Id*. ¶ 80.)  Plaintiff alleges that she was only interviewed for an hour and a half in conjunction

1    with this investigation, and she was not permitted any follow-up.  (*Id.*)

2    On May 9, 2012, plaintiff received a "Notice of Termination" from UCSF.  (*Id.* ¶ 83.)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff.  *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 547, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

A court may also dismiss a complaint for failure to comply with Federal Rule 9(b).  *See Vess v. Ciba–Geigy Corp., USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  Rule 9 provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Such circumstances include the "time, place, and specific content of the false representations as well as the identities of the parties to the

1   misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" *Id.* at 765 (quoting *Moore v. Kayport Package Express*, 885 F.2d 531, 541 (9th Cir. 1989)).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

Defendants have moved to dismiss plaintiff's second through seventeenth, twenty-first, and twenty-second claims on the basis that the Eleventh Amendment bars such claims. Accordingly, the Court considers first the application of the Eleventh Amendment to these claims and then considers whether plaintiff has alleged facts sufficient to support the balance of her claims.

### A. Eleventh Amendment

#### 1. Legal Framework

Eleventh Amendment sovereign immunity "prohibits federal courts from hearing suits brought against an unconsenting state." *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (internal citations omitted). The Eleventh Amendment generally renders states immune from private damages claims brought in federal court, *Stanley v. Trustees of California State University*, 433 F.3d 1129, 1133 (9th Cir. 2006), and bars suits against state agencies as well as those where the state itself is named as a defendant. *See P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). An action for money damages against a state official is also considered to be a suit against the state, and thus barred by the Eleventh Amendment, if "the state is the real, substantial party in interest," or if judgment is sought against the public treasury. *Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*,

1    788 F.2d 600, 604 (9th Cir. 1986) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S.

2    89, 101 (1984); *Demery v. Kupperman*, 735 F.2d 1139, 1145–46 (9th Cir. 1984), *cert. denied*, 469

3    U.S. 1127 (1985)).

4        This immunity also extends to state officials in their official capacity. *See Kentucky v.*

5    *Graham,* 473 U.S. 159, 165–68 (holding that official capacity suits are effectively suits against the

6    entity that the individual represents). Accordingly, plaintiff cannot file suit in federal court to seek

7    damages from the Regents, UCSF, or from the named UCSF administrator defendants in their

8    official capacity in federal court under either federal or state law. *See Pennhurst,* 465 U.S. at 106

9    (holding that the Eleventh Amendment bars plaintiffs from suing states in federal court for

10   violations of state law).

11       Claims against the individual defendants in their individual capacities, however, are not

12   immediately subject to dismissal under the Eleventh Amendment. In *Ex Parte Young*, 209 U.S.

13   123 (1908), the Supreme Court carved out a narrow exception to the doctrine of sovereign

14   immunity, holding that the Eleventh Amendment does not bar suits for prospective declaratory or

15   injunctive relief against state officials in their individual capacity. *See Idaho v. Coeur d'Alene*

16   *Tribe of Idaho*, 521 U.S. 261, 269 (1997). "The *Young* doctrine is premised on the fiction that

17   such a suit is not an action against a 'State' and is therefore not subject to the sovereign immunity

18   bar." *Agua Caliente Band of Cahuilla Indians v. Hardin,* 223 F.3d 1041, 1045 (9th Cir. 2000). A

19   suit explicitly naming a state or state agency as a defendant, however, is still barred by the

20   Eleventh Amendment, even if the only relief sought is prospective declaratory or injunctive relief.

21   *Cory v. White*, 457 U.S. 85, 91 (1982).

22       **2.  Claims Against the Regents, UCSF, and Defendants in their Official**

23           **Capacities**

24       Here, plaintiff alleges that UCSF and the Regents violated her federal constitutional rights

25   and violated state law. Defendants argue that plaintiff's second through seventeenth, twenty-first,

26   and twenty-second causes of actions are foreclosed by the Eleventh Amendment. As stated above,

27   under the Eleventh Amendment, the State of California and its official arms are immune from suit

28   in federal court. *Howlett v. Rose*, 496 U.S. 356, 365 (1990). UCSF and the Regents are

United States District Court
Northern District of California

1  instrumentalities of the State of California for Eleventh Amendment purposes.  *Jackson v.*
2  *Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982).  Thus, the Regents and officers thereof are
3  immune under the Eleventh Amendment from plaintiff's causes of action, and plaintiff's claims
4  against them are **DISMISSED** with prejudice.

5  As to plaintiff's claims against the individual UCSF administrators in their *official*
6  capacities, Eleventh Amendment immunity extends to actions against state officers sued in their
7  official capacities because such actions are, in essence, actions against the governmental entity of
8  which the officer is an agent.  *Id.*, at 1350 (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S.
9  658, 690, n.55 (1978); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).  Here, plaintiff is seeking
10 money damages against these administrators for actions undertaken in their official capacities.
11 (*See* FAC ¶¶ 118, 134, 150, 160, 171, 187, 203, 219, 233, 244, 266, 278, 289, 301, 318, 329, 346,
12 359, 378, 393, 406, 422, 431.)  Accordingly, plaintiff's second through seventeenth, twenty-first,
13 and twenty-second causes of action against the UCSF administrators in their *official* capacities are
14 **DISMISSED** with prejudice.[2]

### 3. Claims Against Defendants in their Individual Capacities

16 Plaintiff argues that she has alleged claims against officers in their individual capacities
17 and that therefore the Eleventh Amendment does not bar her claims against these individuals.  The
18 Court has reviewed the complaint, and giving plaintiff the benefit of extreme leniency, finds that
19 the gravamen of her claims at this juncture alleges suit against these individuals in their official
20 capacity.  Although paragraphs in plaintiff's FAC that explain the formal roles of Plotts, Peterson,
21 and Bade indicate that these individuals are being sued in both their official and individual
22 capacities, in each and every of her twenty-six causes of action, plaintiff states expressly that these
23 individuals were "acting under color of state law within the course and scope of their employment
24 at all material times and with official authority" without any qualification.  (FAC ¶¶ 118, 134, 150,

---

[2] The Court notes that because this is an action for *damages*, dismissal on this basis is proper.  *Cf. Jackson*, at 1350 (noting that the Eleventh Amendment does not bar actions against state officers in their official capacities *if* the plaintiffs seek only a declaratory judgment or injunctive relief) (citations omitted).

8

1    160, 171, 187, 203, 219, 233, 244, 266, 278, 289, 301, 318, 329, 346, 359, 378, 393, 406, 422,
2    431.)  The FAC makes no reference to whether specific causes of action are being pursued against
3    the individual defendants in their individual capacities, and plaintiff's opposition to the instant
4    motion does not provide sufficient clarity.

5          Accordingly, it is unclear which of her twenty-six claims plaintiff is advancing against
6    which defendant in their individual, as opposed to official, capacity.  A straightforward reading of
7    her causes of action supports only that she is suing each of them in their official capacities.  For
8    the reasons set forth above, plaintiff cannot maintain her causes of action against the named
9    defendants in their official capacities.  However, insofar as plaintiff seeks to maintain any of these
10   causes of action against certain of the individual defendants in their *individual* capacities, plaintiff
11   is granted **LEAVE TO AMEND** in order to so clarify.

12         In light of plaintiff's status as a pro se litigant, the Court notes that should plaintiff seek
13   leave to amend her FAC, factual allegations in any second amended complaint regarding these
14   defendants' individual liability must be sufficient to overcome the doctrine of qualified immunity.[3]
15   "The doctrine of qualified immunity protects government officials 'from liability for civil damages
16   insofar as their conduct does not violate clearly established statutory or constitutional rights of
17   which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)
18   (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity protects "all but
19   the plainly incompetent or those who knowingly violate the law," *Hunter v. Bryant*, 502 U.S. 224,
20   229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)), and "spare[s] a defendant not
21   only unwarranted liability, but unwarranted demands customarily imposed upon those defending a
22   long drawn out lawsuit."  *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).  "[Q]ualified immunity is
23   'an immunity from suit rather than a mere defense to liability.'"  *Pearson*, 555 U.S. at 231 (quoting
24   *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Courts assess two factors in determining whether
25   officials are owed qualified immunity: (1) whether the facts alleged, construed in the light most

---

[3] Plaintiff's opposition briefing addresses, correctly, the fact that actions can proceed against named defendants in their individual capacity subject to qualified immunity, but does not provide further clarity on which of her causes of action should be understood as advancing against any specific defendant in his individual capacity. (*See* Dkt. No. 28 at 5-6.)

favorable to the party asserting the injury, show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case. *Id*. at 232, 236.

In sum, because the FAC is unclear as to which of plaintiff's twenty-six claims are being prosecuted against each of Peterson, Plotts, or Bade in their individual capacities, defendants' motion to dismiss on this ground is **GRANTED** without prejudice.

### B. Plaintiff's Remaining Causes of Action[4]

#### 1. Wrongful Discharge in Violation of Public Policy (First Cause of Action)

Defendants argue that plaintiff cannot maintain her first cause of action against the Regents. The Court agrees. *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 899 (2008) ("Because the 'classic *Tameny* cause of action' is a common law, judicially created tort ... and not authorized by statute, it is not properly asserted against the Regents." (citing *Palmer v. Regents of Univ. of Cal.*, 107 Cal. App. 4th 899, 909 (2003) (citations omitted)). Plaintiff does not respond directly to this argument. Rather, plaintiff appears to argue that officers and employees can be held liable for committing wrongful discharge, apparently conceding that the Regents as a public entity cannot be liable. However, such claim cannot proceed against individual defendants, as "a *Tameny* action for wrongful discharge can only be asserted against *an employer*." *Id.* (emphasis in original). Accordingly, defendants' motion to dismiss this claim is **GRANTED**.

#### 2. Violation of Title VI (Eighteenth Cause of Action)

Defendants' arguments as to plaintiff's Title VI claim rests on their contention that the statute of limitations has run.[5] Defendants assume that plaintiff takes issue only with her

---

[4] As to almost all of these causes of action, defendants argue that the applicable statutes of limitation bar plaintiff's claims. The Court reserves on this issue because as to most of these causes of action, plaintiff is either granted leave to amend and may put forth further factual allegations, or the claims are dismissed for independent reasons. *See Bassette v. City of Oakland*, No. C-00-1645 JCS, 2000 WL 33376593, at *4 (N.D. Cal. Aug. 11, 2000). However, in so doing, the Court recognizes that defendants raise statute of limitation concerns, namely that plaintiff's Title VI, Title VII, and state tort claims are time-barred (causes of action eighteen through twenty, and twenty-four through twenty-six). Accordingly, should plaintiff choose to amend her complaint, she should undertake to allege facts that address the applicable statutes of limitation concerns.

[5] Defendants offer further arguments as to plaintiff's Title VI claim in their reply briefing,

10

1   termination, which occurred in May of 2012, and argue that because she filed her complaint more
2   than two years after that event, her Title VI claim is time-barred under the California statute of
3   limitations for personal injury causes of action.
4         The Court has reviewed the allegations in plaintiff's FAC relative to this cause of action
5   and at this juncture, cannot say that plaintiff's Title VI claim hinges definitively on the date of her
6   termination. Moreover, the Court is mindful that the resolution of the statute of limitations,
7   specifically whether tolling might apply or whether the continuing violation doctrine provides
8   grounds for an exception to the mechanistic application of the statute of limitations, may present a
9   question of fact that is ill-suited for resolution upon a motion to dismiss. Indeed, "[a] motion to
10  dismiss based on the running of the statute of limitations period may be granted only if the
11  assertions of the complaint, read with the required liberality, would not permit the plaintiff to
12  prove that the statute was tolled." *Supermail Cargo v. United States*, 68 F.3d 1204, 1206 (9th Cir.
13  1995)) (internal quotation omitted); *see also Doe by and Through Doe v. Petaluma City School*
14  *Dist.*, 830 F. Supp. 1560 (N.D. Cal 1993) (declining to impose statute of limitations to bar
15  plaintiff's federal claims in view of the fact that tolling might be warranted and the complaint did
16  not conclusively limit the subject offense to a date certain outside the limitations period).
17        Defendants do not sufficiently address these concerns. Defendants' motion to dismiss this
18  cause of action is **DENIED**. However, because the FAC is unclear as to precisely what actions
19  constitute the basis for plaintiff's Title VI claim, plaintiff shall provide further factual allegations
20  and clarity in support of the same in any second amended complaint.
21        **3. Violation of Title VII (Nineteenth and Twentieth Causes of Action)**
22        Defendants maintain that the individual defendants cannot be liable under Title VII. The
23  Court agrees. *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993) ("The liability
24  schemes under Title VII and the ADEA are essentially the same in aspects relevant to this issue;
25  they both limit civil liability to the employer." (citing 42 U.S.C. § 2000e-5(g) (1988) (further
26  citations omitted)). However, the FAC is not entirely clear as to whether the Title VII claims are
27
28  but as these arguments were not raised in their opening brief, the Court declines to address them.

11

1   being asserted as the individuals in their individual, as opposed to official, capacity.  To the extent
2   such claims are asserted against the individual defendants under Title VII, in their individual
3   capacities, they are **DISMISSED**.

4         Defendants offer myriad additional arguments against plaintiff's Title VII claims, one of
5   which is statute of limitations.  (Mot. at 10-11.)  Defendants also ambiguously argue that the
6   Eleventh Amendment bars this claim, however this argument received scant attention and the
7   Court will not endeavor to craft the argument for defendants.  (Dkt. 29 ("Reply") at 1.)  The Court
8   notes, however, that Congress may abrogate state sovereign immunity pursuant to section 5 of the
9   Fourteenth Amendment, and that the Supreme Court in *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976),
10  concluded that Title VII's authorization of federal-court jurisdiction to award money damages
11  against a state government to individuals subjected to employment discrimination does not violate
12  the Eleventh Amendment because Congress was acting pursuant to its section 5 powers.  *See also*
13  *Idaho*, 521 U.S. at 279 (recognizing same).  Defendants further appear to argue that these claims
14  have not been exhausted administratively, which failure would remove this court of jurisdiction to
15  provide over these claims.  (Reply at 9.)  Accordingly, plaintiff is granted **LEAVE TO AMEND** these
16  claims to address these concerns.

      **4.  Misrepresentation (Twenty-Third Cause of Action)**

18        Defendants maintain that plaintiff's twenty-third cause of action is precluded as to the
19  Regents and its employees pursuant to California Government Code sections 818.8 and 822.2.
20  Plaintiff does not dispute that defendant Regents is immune from liability pursuant to section
21  818.8 and the Court so finds.  Defendants' motion on this claim is **GRANTED** with respect to the
22  defendant Regents.  However, as to immunity for the alleged misrepresentations committed by the
23  individual defendants, which plaintiff alleges occurred while they were acting in the scope of their
24  employment, the Court notes that although the statutory provision cited by defendants generally
25  states that "[a] public employee acting in the scope of his employment is not liable for an injury
26  caused by his misrepresentation, whether or not such misrepresentation be negligent or
27  intentional," this same provision also admits of potential liability where there was fraud,
28  corruption, or actual malice.  Cal. Govt. Code § 822.2.  Plaintiff's FAC, however, does not plead

facts sufficient to render plausible an inference that her claims might fall within this exception.[6] Defendant's motion to dismiss this cause of action is therefore **GRANTED** without prejudice. Plaintiff shall have leave to amend this claim, with respect to her allegations against the individual defendants, in order to allege facts supporting a finding that an exception might apply.[7] In any second amended complaint, plaintiff shall make clear precisely which of each defendant's statements give rise to this cause of action.

### 5. Defamation (Twenty-Fourth Cause of Action)

Defendants maintain that plaintiff's defamation claim should be dismissed because such publications were privileged and subject to absolute immunity under California Government Code section 821.6, and because such statements were protected by the common interest privilege. Plaintiff does not address the majority of these arguments. The Court notes that California Government Code provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal Govt. Code § 821.6. However, plaintiff's FAC does not make clear whether the statements that are allegedly defamatory were made in the context of instituting or prosecuting any proceeding against plaintiff; certain appear simply to have been knowingly false and derisive statements outside the scope of what Government Code section 821.6 contemplates. (*See* FAC ¶ 67.) Accordingly, having construed plaintiff's complaint with considerable liberality, the Court finds that it is unclear to what extent statements forming the basis for plaintiff's defamation claim fall outside the cited privilege.

In similar fashion, defendants argue that California Civil Code section 47(c) protects the

---

[6] In their Reply, defendants cite to California Civil Code section 47(b)(3) for the proposition that statements amounting to alleged misrepresentations are privileged. (Reply at 7-9.) However, this precise argument was not made in their opening brief. (*See* Mot. at 18-19.) Moreover, the Court notes that although certain of the misrepresentations that figure in the FAC concern statements that might have been made during the course of an official proceeding authorized by law, certain statements with which plaintiff appears to take issue occurred before her termination and apparently outside the context of any official proceeding. (FAC ¶ 67.)

[7] In so amending, plaintiff is reminded that under Federal Rule of Civil Procedure 9(b), a heightened standard applies to averments of fraud or mistake. *See Vess*, 317 F.3d at 1107.

13

1  allegedly defamatory statements. Again, however, it is not clear from the FAC that the statements
2  with which plaintiff is taking issue fall exclusively within the scope of that privilege.

3  Thus, defendants' motion to dismiss this cause of action is **GRANTED** without prejudice.
4  Should plaintiff elect to file a Second Amended Complaint ("SAC"), she must take care to identify
5  which statements were allegedly defamatory, whether such statements were related to her
6  performance and if not, how so, and factual allegations to support an inference that such
7  statements were made with malice. In addition, defendants have argued that the applicable statute
8  of limitations bars this claim; any amendment shall be made with the appropriate statute of
9  limitations in mind. Finally, it is not clear whether plaintiff is asserting this claim against the
10 Regents, or whether this claim is directed only as to the individual defendants (and if so, in their
11 official or individual capacities). Having read the substance of plaintiff's claim, it appears that she
12 is advancing this claim against the individual defendants in their individual capacities. In any
13 SAC, plaintiff will make clear exactly as to whom she is bringing her defamation claim, and the
14 facts supporting liability for those individuals/entities.

### 6. Intentional and Negligent Infliction of Emotional Distress (Twenty-Fifth and Twenty-Sixth Causes of Action)

17 Defendants maintain that (i) plaintiff's emotional distress causes of action are barred by the
18 exclusivity provision of California Workers' Compensation law; (ii) that defendants are immune
19 from liability; and (iii) plaintiff has failed to offer sufficient factual allegations to state a claim.
20 Again, plaintiff does not respond to these arguments in full. The Court notes that on the face of
21 the FAC, the alleged wrongful conduct giving rise to plaintiff's emotional distress claims
22 "occurred at the worksite, in the normal course of the employer-employee relationship, and
23 therefore workers' compensation is plaintiffs' exclusive remedy for any injury that may have
24 resulted." *Miklosy*, 44 Cal. 4th at 902 (2008) (citing *Livitsanos v. Superior Court*, 2 Cal.4th 744,
25 754 (1992); *Shoemaker v. Myers*, 52 Cal. 3d 1, 25 (1990); *Cole v. Fair Oaks Fire Protection Dist.*,
26 43 Cal. 3d 148, 160 (1987)). Furthermore, California Government Code section 815 abolished
27 common law tort liability for public entities unless provided by statute expressly, and plaintiff has
28 to this point cited none. For these reasons, it is manifest that plaintiff has not stated an intentional

14

infliction of emotional distress claim, or a negligent infliction of emotional distress claim, on the facts as alleged. Defendants' motion to dismiss this claim is therefore **GRANTED** without prejudice. Nonetheless, out of an abundance of caution, the Court provides plaintiff an opportunity to amend her claim in order to include additional factual allegations to support these causes of action.

**CONCLUSION**

Accordingly, defendants' motion to dismiss is **GRANTED** with leave to amend as set forth above.[8] In summary, the holdings are as follows:

1. First Cause of Action: **DISMISSED;**
2. Second through Seventeenth, Twenty-First, and Twenty-Second Causes of Action: **DISMISSED** as to the Regents and defendants in their official capacities; plaintiff given **Leave to Amend** to clarify which causes of action pertain to defendants in their individual capacities and provide further factual allegations;
3. Eighteenth Cause of Action: Motion to dismiss is **DENIED;**
4. Nineteenth and Twentieth Causes of Action: **DISMISSED** as to individual defendants in their individual capacities, but plaintiff is granted **Leave to Amend;**
5. Twenty-Third Cause of Action: **DISMISSED** as to the Regents, but plaintiff is granted **Leave to Amend** with respect to her claim against individual defendants;
6. Twenty-Fourth Cause of Action: **DISMISSED** with **Leave to Amend;**
7. Twenty-Fifth and Twenty-Sixth Causes of Action: **DISMISSED** with **Leave to Amend**.

---

[8] The Court notes that in her opposition, plaintiff raised claims for relief that were not pleaded in her FAC, specifically California Civil Code section 52.1 and California Government Code section 8547.10. Because these allegations formed no part of plaintiff's FAC and thus were not properly presented for consideration of the instant motion, the Court expresses no opinion as to their sufficiency or viability. Plaintiff is free, however, to include such allegations and causes of action in any SAC.

Separately, defendants take issue with plaintiff's request for punitive damages. Specifically, defendants argue that the Regents cannot be liable for such damages, and that as to the individual defendants, plaintiff has alleged no basis for a punitive damages award. (Mot. at 33.) However, in plaintiff's prayer for relief, such damages are requested only relative to the individual defendants, not the Regents. (FAC ¶ 437.) Because plaintiff has been provided leave to amend as to the allegations and claims against the individual defendants, the Court reserves on the question of whether punitive damages might be available in this case.

15

Any Second Amended Complaint shall be filed no later than **thirty-five days** following the issuance of this Order.

The Court notes that the issues presented in this case are complex, and that as a pro se litigant, plaintiff has not had the benefit of legal assistance in drafting her complaint or in responding to defendants' highly technical legal arguments. The Court further notes that as a pro se litigant, plaintiff may seek assistance at the Court's Legal Help Center if she makes an appointment. The Legal Help Center's phone number is (415) 782-8982 and its website is http://cand.uscourts.gov/helpcentersf.

This terminates Docket No. 11.

**IT IS SO ORDERED.**

Dated: February 4, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT**