UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DENISE STRIPLING,**<br><br>Plaintiff,<br><br>v.<br><br>**REGENTS OF THE UNIVERSITY OF CALIFORNIA, ET AL.,**<br><br>Defendants. | Case No. 14-cv-02606-YGR<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT IN PART, DENYING IN PART; SETTING INITIAL CASE MANAGEMENT CONFERENCE**<br><br>**Re: Dkt. No. 44** |

Plaintiff Denise Stripling ("Stripling") brings this civil action in a *pro se* capacity against defendants Regents of the University of California ("Regents"), University of California San Francisco ("UCSF"), John Plotts, Michael Bade, and Craig Peterson (collectively, "individual defendants") for claims arising from her employment and ultimate termination at UCSF. This Court previously granted in part defendants' motion to dismiss plaintiff's first amended complaint (Dkt. No. 33). That order dismissed claims against the Regents and UCSF, and against the individual defendants in their official capacities, as prohibited by the Eleventh Amendment's protections of sovereign immunity and allowed plaintiff leave to amend claims against the individual defendants in their individual capacities.

Plaintiff's second amended complaint ("SAC") alleges thirty-six causes of action against the individual defendants, a thirty-seventh cause of action against all defendants, and seeks damages. (Dkt. No. 40.) Defendants have filed a motion to dismiss arguing that Stripling has again failed to state any claims, primarily on bases rooted in principles of (i) sovereign immunity, (ii) qualified immunity, (iii) and statutes of limitation. (Dkt. No. 44 ("Mtn.").) Having carefully considered the papers submitted and the pleadings in this action, oral argument held on August 18,

2015, and for the reasons set forth below, the Court hereby **GRANTS IN PART** the motion to dismiss as follows:

1. <u>Dismissal Uncontested</u>: Defendants' motion to dismiss the First, Fifth, Ninth, Thirteenth, Fifteenth, Twenty-Second, Twenty-Third, Thirty-Fifth, Thirty-Sixth and Thirty-Seventh (as to the individual defendants) Causes of Action is **GRANTED**.

2. <u>Sovereign Immunity (First 36 Causes of Action)</u>: Defendants' motion to dismiss on sovereign immunity grounds is **DENIED**.

3. <u>Qualified Immunity (First 36 Causes of Action)</u>: Defendants' motion to dismiss on qualified immunity grounds is **DENIED** with respect to the Second, Sixth, Tenth, and Nineteenth Causes of Action. The denial is **WITHOUT PREJUDICE** to raising a qualified immunity defense at a later stage.

4. <u>Misrepresentation (Eighteenth Cause of Action)</u>: Defendant's motion to dismiss this claim is **GRANTED**.

5. <u>Conspiracy (Thirty-Third and Thirty-Fourth Causes of Action)</u>: Defendants' motion to dismiss the conspiracy claims is **GRANTED.**

6. <u>Statute of Limitations Defense</u>: Defendants' motion to dismiss the Third, Fourth, Seventh, Eighth, Eleventh, Twelfth, Fourteenth, Sixteenth, Seventeenth, Twenty-Fourth, Twenty-Fifth, Twenty-Sixth, Twenty-Seventh, Twenty-Eighth, Twenty-Ninth, Thirtieth, Thirty-First, Thirty-Second, and Thirty-Seventh Causes of Action on statute of limitations grounds is **GRANTED**.

## I. CHANGES REFLECTED IN SECOND AMENDED COMPLAINT

The SAC spans more than two-hundred pages and contains more than eight-hundred paragraphs detailing plaintiff's factual allegations, thirty-seven claims for relief, and her requests for damages. The Court previously recounted the salient allegations of the first amended complaint (Dkt. No. 11 ("FAC")) in its order on defendants' motion to dismiss the same. (Dkt. No. 33.) In essence, plaintiff alleged a series of improper treatment – including harassment, discrimination, and retaliation – by defendants during her employment as an associate project manager at UCSF beginning in March 2008 through May 9, 2012, the date she received a notice of

termination from UCSF. Plaintiff further alleged that, during the pendency of her employment with UCSF, she lodged a series of complaints with UCSF's human resources department, defendant Michael Bade (defendant Craig Peterson's supervisor), and UCSF's general counsel regarding her perceived: (i) disparate treatment and harassment based on race; (ii) retaliation by Peterson in response to plaintiff's complaints of alleged race-related discrimination; and (iii) retaliation by Peterson in response to plaintiff's intent to file an internal whistleblower complaint for Peterson's alleged conflict of interest in awarding certain contracts. Finally, plaintiff alleged that her ultimate termination was the result of discrimination, harassment, and retaliation.

The pertinent allegations in the SAC largely echo those in the FAC. Although plaintiff adds myriad additional facts in an attempt to overcome several of defendants' previous challenges to the FAC, only three categories of changes are relevant to this Court's decision. First are the amendments tending to show the capacity (official or individual) in which she sues the individual defendants. Second are those relating to the claims of misrepresentation. Third are those relative to actions or inactions by defendants after plaintiff's termination date. The Court outlines each in turn:

The first set of amendments relates to Causes of Action One through Thirty-Six, inclusive. In summary, and in contrast to the FAC's allegations that the individual defendants were being sued in both their "individual and official capacities," (FAC ¶¶ 9-11) the SAC explicitly alleges that plaintiff sues Plotts, Bade, and Peterson in their "individual capacity except where noted as 'official authority.'" (SAC ¶¶ 15-17.)[1] Similarly, the SAC changes the statement previously appearing in every cause of action of the FAC to eliminate the reference to "official authority" and replace with "individual capacity." Thus, while the FAC alleged that defendants were "acting under color of state law within the course and scope of their employment at all material times and

---

[1] The Court notes that the succeeding sentences in the SAC are identical to those in the FAC. Namely, plaintiff goes on to allege that the individual defendants, in their respective roles "[are and were] at all relevant times acting under color of state law and within the course and scope of [their] employment by the Regents. As [persons in their respective roles, the individual defendants were] at all relevant times authorized to speak and act for and on behalf of UCSF with respect to all matters discussed in this complaint." (*Cf.* FAC ¶¶ 9-11 and SAC ¶¶ 15-17.)

3

1  with official *authority*," the SAC now alleges that each individual defendant acted "under color of
2  state law and in his *individual capacity*" (SAC ¶¶ 113, 156, 194, 249, 293, 335, 384, 410, 432) or
3  "under color of state law within the course and scope of their employment at all material times and
4  in his *individual capacity*," (SAC ¶¶ 616, 625, 634, 661, 672, 685, 698, 708, 718, 729, 748, 767,
5  774, 778, 796, 814, 827) with respect to their offending conduct. (Italics supplied.)

Plaintiff also goes to great lengths to provide detailed descriptions of the specific conduct underlying her claims against the individual defendants in the SAC. For example, with respect to her Second Cause of Action for retaliation in violation of 42 U.S.C. section 1981, plaintiff enumerates seventeen actions and/or inactions by defendant Peterson allegedly constituting retaliatory conduct. (SAC ¶ 183.)[2] Peterson's alleged conduct in this regard includes several instances of his failure to comply with a UCSF policy, illegitimate work directives, and terminating plaintiff's employment, among others. (*Id*.)

Second, with respect to her claim for misrepresentation, the SAC is now limited to defendant Peterson,[3] including allegations asserting the requisite fraud, corruption, and malice. (*See* SAC ¶¶ 574-95.) In particular, the allegations focus on communications to individuals investigating her November 2011 complaint, and race discrimination and retaliation complaints, namely to Cynthia Passon (SAC ¶ 579) and Judith Rosenberg (*id.* ¶ 580), respectively.

Lastly, plaintiff amends the SAC to include a new allegation of wrongdoing by defendants subsequent to plaintiff's termination and through May 6, 2013 (SAC ¶ 95), seemingly to address the Court's concern with possible statutes of limitation defenses. (Dkt. No. 33 at 11.) Therein, plaintiff claims that defendants continued their retaliation against her following her termination in the course of related to various administrative investigations and public records requests.

---

[2] Plaintiff likewise enumerates twenty-five examples of retaliatory conduct by defendant Bade (SAC ¶ 321) and thirteen by defendant Plotts (*Id*. ¶ 422) in support of Causes of Action 6 and 10, respectively, under 42 U.S.C. section 1981.

[3] The FAC brought a claim for misrepresentation against all defendants, not only defendant Peterson. (FAC ¶¶ 392-404.)

## II.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 547, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

A court may also dismiss a complaint for failure to comply with Federal Rule 9(b).  *See Vess v. Ciba–Geigy Corp., USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  Rule 9 provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  Such circumstances include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).  "In the context of a fraud suit

5

involving multiple defendants, a plaintiff must, at a minimum 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" *Id.* at 765 (quoting *Moore v. Kayport Package Express*, 885 F.2d 531, 541 (9th Cir. 1989)).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

### III. DISCUSSION

At the outset, the Court recognizes that plaintiff's opposition to defendants' motion (Dkt. No. 51 ("Oppo.")) does not contest dismissal of the First, Fifth, Ninth, Thirteenth, Fifteenth, Twenty-Second, Twenty-Third,[4] Thirty-Fifth, Thirty-Sixth, or Thirty-Seventh (as to the individual defendants only) Causes of Action. Additionally, the Court construes plaintiff's acknowledgment that employees may not be liable for "failure to prevent claims" under Cal. Gov. Code sections 12490 *et seq.* (Oppo. at 34), in conjunction with her silence on the viability of the Twentieth and Twenty-First Causes of Action, to be a concession that she cannot maintain those claims. Therefore, the Court **GRANTS** defendants' motion to dismiss these claims without further analysis.

Defendants argue that the first thirty-six causes of action should be dismissed for two independent reasons. First, defendants argue the SAC lacks allegations that the individual defendants acted in their *individual* capacities, and therefore the Court's previous ruling that the Eleventh Amendment bars such claims against the individual defendants to the extent they are made in their *official* capacities disposes of these claims entirely. Second, if the Court finds that the SAC states claims against the individual defendants in their individual capacities, defendants

---

[4] Plaintiff's opposition to defendants' motion appears to contain at least two typographical errors. First, plaintiff mistakenly refers to the Twenty-Second Cause of Action where the relevant portion of her opposition is explicitly limited to her claim under California Labor Code 52.1, which is the Twenty-Third Cause of Action in the SAC. (Oppo. at 35:3.) Likewise, plaintiff mistakenly refers to the Twenty-Seventh Cause of Action where the relevant portion of her opposition is explicitly limited to her Title VI claim, which is the Thirty-Seventh Cause of Action in the SAC. (Oppo. at 34:24.)

6

1  argue that the doctrine of qualified immunity prohibits plaintiff from recovering.

2  Defendants next move separately as to other specific cause of action. As for the
3  Eighteenth Cause of Action, defendant Peterson seeks dismissal based on immunity under
4  California Government Code section 822.2, privilege under California Civil Code section
5  47(b)(3), and purported common law co-employee immunity. As to the conspiracy claims
6  (Thirty-Third and Thirty-Fourth Causes of Action), defendants argue that plaintiff does not plead
7  sufficient facts to support these causes of action. Finally, defendants ask the Court to dismiss a
8  majority of plaintiff's claim as outside the statute of limitations.[5] The Court considers defendants'
9  arguments in turn.

### A. Eleventh Amendment Sovereign Immunity (First 36 Causes of Action)

#### 1. Legal Framework

Sovereign immunity "prohibits federal courts from hearing suits brought against an unconsenting state." *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (internal citations omitted). The Eleventh Amendment generally renders states immune from private damages claims brought in federal court, *Stanley v. Trustees of California State University*, 433 F.3d 1129, 1133 (9th Cir. 2006), and bars suits against state agencies as well as those where the state itself is named as a defendant. *See P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). An action for money damages against a state official is also considered to be a suit against the state, and thus barred by the Eleventh Amendment, if "the state is the real, substantial party in interest," or if judgment is sought against the public treasury. *Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 604 (9th Cir. 1986) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984); *Demery v. Kupperman*, 735 F.2d 1139, 1145–46 (9th Cir. 1984), *cert. denied*, 469 U.S. 1127 (1985)). Accordingly, plaintiff cannot file suit in federal court to seek damages from the Regents, UCSF, or from the named UCSF administrator defendants in their official capacity in federal court

---

[5] These are the Third, Fourth, Seventh, Eighth, Eleventh, Twelfth, Fourteenth, Sixteenth, Seventeenth, Twenty-Fourth, Twenty-Fifth, Twenty-Sixth, Twenty-Seventh, Twenty-Eighth, Twenty-Ninth, Thirtieth, Thirty-First, Thirty-Second, Thirty-Fourth, and Thirty-Seventh Causes of Action.

7

under either federal or state law. *See Pennhurst,* 465 U.S. at 106 (holding that the Eleventh Amendment bars plaintiffs from suing states in federal court for violations of state law).

The Supreme Court has recognized important limits on sovereign immunity, at least two of which are at issue here. First, and central to the Court's analysis, is the notion that claims against the individual defendants in their individual capacities are not immediately subject to dismissal on the basis of sovereign immunity.[6] Sovereign immunity will not bar suit for money damages against a state officer in his individual capacity "for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally." *Alden v. Maine*, 527 U.S. 706, 757 (1999). "By contrast, official capacity suits ultimately seek to hold the entity of which the officer is an agent liable, rather than the official himself: they 'generally represent [merely] another way of pleading an action against an entity in which an officer is an agent.'" *Pistor v. Garcia*, No. 12-17095, --F.3d--, 2015 WL 3953448, at *4 (9th Cir. June 30, 2015) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985)).

The second of these limitations exists where Congress properly authorizes suit against the states by, for example, enacting legislation pursuant to its enforcement power under the Fourteenth Amendment, section 5. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) ("But we think that the Eleventh Amendment, and the principle of state sovereignty which it embodies [citation], are necessarily limited by the enforcement provisions of section 5 of the Fourteenth Amendment.")

**2. Analysis**

The Court previously dismissed all causes of action against the individual defendants to the extent they were sued in their official capacities. (*See* Dkt. No. 33.) Plaintiff now alleges in the SAC that Plotts, Bade, and Peterson are "sued in [their] individual capacity except where noted as 'official authority.'" (SAC ¶¶ 15-17.)

Defendants move to dismiss all of plaintiff's causes of action, except for the Thirty-

---

[6] As discussed in Section III B, *infra*, state officials sued in their individual capacities and not entitled to *sovereign* immunity can nonetheless be entitled to other immunities against suit.

8

Seventh,[7] on sovereign immunity grounds, arguing that the SAC can only be read as an official-capacity suit. Defendants maintain that the SAC "makes clear that this is a suit for damages for acts or omissions conducted by campus officials within their official capacities." (Mtn. at 6:28-7:1.) Defendants proceed to argue that inclusion of language that defendants were acting "under color of state law within the course and scope of [their] employment" in the causes of action support their contention that this is an official-capacity suit. (*Id*. at 7:4-9.) And, defendants provide a lengthy chart in an effort to show that each of plaintiff's causes of action "relies on acts performed by public officials in their official capacity." (*Id*. at 11:22-23.)

Defendants misconstrue the distinction between personal-capacity and official-capacity suits for purposes of sovereign immunity. The relevant inquiry is not the capacity in which the defendants allegedly engaged in unlawful conduct, but rather the capacity in which a plaintiff seeks to sue and recover against a defendant. *Alden*, 527 U.S. at 757. In that respect, defendants concede that the SAC contains general allegations that plaintiff is suing each of the individual defendants in their individual capacities. (SAC ¶¶ 15-17; Mtn. at 7:1-3.)

The Court finds plaintiff's allegations sufficiently clear such that a straightforward reading of the SAC shows that plaintiff brings all of her causes of action against Plotts, Bade, and Peterson in their individual (personal) capacities. Indeed, the SAC explicitly states as much. (SAC ¶¶ 15-17.) With respect to the qualification that defendants are not sued in their individual capacities "where noted as 'official authority,'" the Court has reviewed the SAC and finds the "official authority" language only in the Eighteenth and Thirty-Seventh Causes of Action. (SAC ¶¶ 575 and 840, respectively.) However, for the reasons set forth below, both of these claims are otherwise dismissed, rendering a sovereign immunity analysis unnecessary.[8]

---

[7] Defendants appropriately do not move to dismiss plaintiff's Thirty-Seventh Cause of Action under 42 U.S.C. section 2000d (Title VI) based on sovereign immunity grounds. Congress "expressly abrogated States' sovereign immunity against suits brought in federal court to enforce Title VI." *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). By contrast, sovereign immunity is not waived as to civil rights claims under sections 1981, 1983, or 1985 – the statutory bases for a majority of plaintiff's remaining causes of action in the SAC. *See Pitman v. Oregon, Employment Dept.*, 509 F.3d 1065, 1072 (9th Cir. 2007).

[8] The Court notes that it would not be inclined to bar these claims on sovereign immunity grounds on the (seemingly inadvertent) inclusion of this language alone.

Defendants further argue that the *McAllister* case requires a different result. *See McAllister v. Los Angeles Unified School District, et al.*, 216 Cal.App.4th 1198 (2013). The Court disagrees. As defendants properly concede, the authority is instructive, but not dispositive. Moreover, the facts in *McAllister* are not consistent with the facts here. In *McAllister*, the court found that the "language of the [original] complaint [left] no question that [the public employee] was sued in his official capacity and not as an individual." *Id.* at 1209. On those facts, the court concluded it would be inappropriate to permit plaintiff leave to amend the complaint to sue the employee defendant in his individual capacity because amendment would be a "mere pleading device," and because California state law governing amendments so required. *Id.* at 1213-14. Not so here. First, the FAC ambiguously alleged that the individual defendants were sued in both their official and individual capacities, creating uncertainty. (*See* Dkt. No. 33 at 9-10.) Second, the Court previously granted plaintiff leave to amend, in part to clarify whether defendants were sued in their official or individual capacities. (*Id.*) Plaintiff complied, and defendants' suggestion that the SAC employs a "mere pleading device" does not persuade.

Accordingly, the Court finds the individual defendants properly sued in their individual capacities and the protections of sovereign immunity unavailable. Defendants' motion on sovereign immunity grounds is **DENIED**.

### B. Qualified Immunity (First 36 Causes of Action)

#### 1. Legal Framework

Although the individual defendants cannot assert sovereign immunity, state officials defending personal-capacity suits may be able to assert other personal immunity defenses, including qualified immunity. *See Graham*, 473 U.S. at 167. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)), and "spare[s] a defendant not only unwarranted liability, but

unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). "[Q]ualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson*, 555 U.S. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Courts assess two factors in determining whether officials are owed qualified immunity: (1) whether the facts alleged, construed in the light most favorable to the party asserting the injury, show the officer's conduct violated a statutory or constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case. *Id*. at 232, 236. A plaintiff carries the "burden to prove that the defendants violated a right that was 'clearly established' at the time of the alleged misconduct.'" *Bator v. State of Hawai'I*, 39 F.3d 1021, 1027 (9th Cir. 1994) (quoting *Baker v. Racansky*, 887 F.2d 183, 186 (9th Cir. 1989)).

### 2. Analysis

The individual defendants contend they are entitled to qualified immunity because the SAC does not contain facts showing that they violated plaintiff's clearly established statutory or constitutional rights. Rather they argue that plaintiff's new allegations in the SAC serve to bolster their claim of qualified immunity because the SAC only alleges that their decisions, actions, and inactions were "mistaken" or "incorrect." (Mtn. at 13:2-4.) The Court disagrees.

Plaintiff has alleged numerous facts that the individual defendants violated her right to be free in the workplace from discrimination, harassment, and retaliatory behavior based on race under 42 U.S.C. section 1981[9] and that defendant Peterson's behavior specifically violated her right to be free of a hostile work environment under California Government Code section 12490(h)(1). As a preliminary matter, the Court notes that nowhere in the SAC does plaintiff allege – or even insinuate – that the individual defendants were somehow "mistaken" or pursued "incorrect" actions. Indeed, she very specifically alleges that defendants Plotts, Bade, and

---

[9] As to the misrepresentation claim (Cause of Action Eighteen), a public employee's qualified immunity is statutorily defined in California Government Code Section 822.2. This claim is specifically discussed in Section III C, *infra*. Otherwise the Court dismisses the balance of plaintiff's causes of action for the reasons discussed in Sections III D, and E, *infra*, and so the Court declines to conduct a qualified immunity analysis as unnecessary.

11

Peterson each took adverse employment actions against her motivated either by her race, and/or by their knowledge that she filed complaints based on that same discriminatory behavior. (*See, e.g.*, SAC ¶¶ 158, 164, 182, 183, 295, 321, 411, 422). Defendants effectively ignore these allegations, and consequently, fail to demonstrate at this stage that they are entitled to a qualified immunity defense for the claims under section 1981 (Second, Sixth, Tenth Causes of Action) or plaintiff's hostile work environment claim (Nineteenth Cause of Action).

Accordingly, defendants' motion to dismiss the Second, Sixth, Tenth, and Nineteenth Causes of Action on qualified immunity grounds is **DENIED WITHOUT PREJUDICE** to raising the defense at a later stage.

### C. Misrepresentation (Eighteenth Cause of Action)

Defendant Peterson moves to dismiss plaintiff's Eighteenth Cause of Action for misrepresentation on three grounds: (i) the SAC fails to plead "fraud, corruption, or malice" sufficient to overcome California Government Code section 822.2 which would otherwise provide immunity to Peterson as a government employee; (ii) his statements are entitled to privileged status under California Civil Code section 47(b)(3); and (iii) he is entitled to co-employee immunity. The Court addresses each in turn.

Threshold to its analysis, the Court reviews the allegations of this claim. Plaintiff's allegations swing between standard language used for traditional fraud claims and that used for retaliation in the workplace. More particularly, plaintiff identifies "deceitful and malicious" communications by Peterson to (i) Cynthia Passon who investigation plaintiff's November 2011 complaint (SAC ¶ 579) and (ii) Judith Rosenberg who investigated plaintiff's race discrimination and retaliation complaint (*id.* ¶ 580). She claims Peterson's deceit was communicated to others both orally (*id.* ¶¶ 581, 586), through the delivery of a falsified "Letter of Warning" regarding her performance (*id.* ¶¶ 71, 584, 585), and directly in the investigations (*id.* ¶ 590). All of which she claims ultimately resulted in the "denial [of] an unbiased investigation" (*id.* ¶ 587) and an adverse employment decision (*id.* ¶ 590).

The Court disagrees with defendant's first proposition that the SAC does not contain sufficient allegations of "fraud, corruption, or malice" and on that basis the Court would deny the

12

motion. However, the inquiry does not end. While malice may have been alleged, the gravamen of the allegations stem from defendant Peterson's conduct during the course of two investigations. Accordingly, defendants are correct that such conduct receives privileged status under established California law, even in light of allegations of malice. *Garamendi v. Golden Eagle Ins. Co.,* 128 Cal.App.4th 452, 478 (2005) (the privilege under Civil Code section 47(b) "has been interpreted broadly to protect communication to or from governmental officials which may precede the initiation of formal proceedings.") (quoting *Hagberg v. California Federal Bank FSB*, 32 Cal.4th 350, 365 (2004)). On that basis, the motion must be granted.

With respect to defendant's third independent ground based upon a "co-employee immunity" defense, that argument does not persuade. Defendant Peterson asserts he is entitled to a co-employee immunity, relying on a single California Court of Appeals case, *Sheppard v. Freeman*, 67 Cal.App.4th 339, 347 (1998), for his proposition. *Sheppard* created a co-employee immunity, holding that "former employee cannot sue individual employees based on their conduct, including acts or words, relating to personnel actions." *Id*. *Sheppard* has received considerable criticism in the Ninth Circuit, including by other judges in this District. *See Morcote v. Oracle Corp.*, 2005 WL 3157512 at *7 (N.D. Cal. Nov. 23, 2005) (declining to adopt the rule announced in *Sheppard*); *May v. Semblant, Inc.*, 2013 WL 5423614 (N.D. Cal. Sept. 27, 2013) (finding that the policy considerations underlying *Sheppard* were not present in that case). Likewise, the court in *Graw v. Los Angeles County Metro. Transp. Auth.*, 52 F.Supp.2d 1152 (C.D. Cal. 1999) declined to adopt the *Sheppard* immunity, noting that it is only bound to follow state law as announced by the California Supreme Court, and even surmising that the California Supreme Court would "decline to approve a judicially created privilege of such broad dimensions." *Id*. at 1160. The Court agrees with the reasoning in *Marcote*, *May*, and *Graw*, and similarly holds that defendant Peterson cannot be immune from liability on the basis of the judicially-created immunity announced in *Sheppard*.

Based on the foregoing, defendant Peterson's motion to dismiss the Eighteenth Cause of Action is **GRANTED**.

**D. Conspiracy (Thirty-Third and Thirty-Fourth Causes of Action)**

Defendants Bade and Plotts move to dismiss plaintiff's conspiracy claims against them as containing insufficient facts to state a cause of action.[10] To state her claim under 42 U.S.C. section 1985(3), plaintiff must allege four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 828-29 (1983)). Defendants argue that her claims fail because the pleading only contains vague, generalized statements, and does not allege with any plausibility either that a conspiracy actually exists, or any overt acts in furtherance thereof.

The Court agrees. The SAC does not contain any facts that a conspiracy existed other than its generalized conclusion that defendants Bade and Plotts were generally engaging in an undefined "conspiracy." The SAC is also completely void of any particular acts taken by defendants in furtherance of the conspiracy. Accordingly, her conspiracy claims must fail and the motion to dismiss the Thirty-Third and Thirty-Fourth Causes of Action is **GRANTED**.

**E. Statutes of Limitation**

Defendants contend that the remaining causes of action[11] are time-barred because they

---

[10] Defendants also move to dismiss the conspiracy claims on the bases of qualified immunity and statute of limitations. Because the Court finds that these causes of action are not properly pled, it declines to address the remaining issues raised by defendants.

[11] Namely, defendants move to dismiss as time-barred the causes of action for: (1) violations under 42 U.S.C. section 1983 (Third, Fourth, Seventh, Eighth, Eleventh, Twelfth, Fourteenth, Sixteenth, Seventeenth, Twenty-Fourth, Twenty-Fifth, Twenty-Sixth, Twenty-Seventh, Twenty-Eighth, Twenty-Ninth, Thirtieth Causes of Action); intentional infliction of emotional distress (Thirty-First Cause of Action); negligent infliction of emotional distress (Thirty-Second Cause of Action); and violations under 42 U.S.C. section 2000d (Thirty-Seventh Cause of Action). Defendants also move to dismiss the conspiracy claims (Thirty-Third and Thirty-Fourth Causes of Action) as time barred, but for the reasons explained in Section D, *supra*, the allegations in the SAC cannot sustain these claims.

14

allege violations of law subject to a two-year statute of limitation.[12] Defendants argue that the allegedly discriminatory conduct could not have occurred any later than plaintiff's termination from employment on May 9, 2012, and plaintiff's original complaint was filed more than two years later on June 6, 2014.

Plaintiff agrees that the applicable periods are two years, but presents three doctrines by which she claims her causes of action nevertheless survive: (1) the continuing violations doctrine; (2) equitable estoppel due to defendants' fraudulent concealment; and (3) equitable tolling during the pendency of plaintiff's administrative proceedings. The Court considers each of plaintiff's arguments in turn below.

### 1. Continuing Violations Doctrine

The continuing violations doctrine allows a plaintiff to bring suit based in part on events that would otherwise be time-barred, so long as the plaintiff can "show a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period." *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1480 (9th Cir. 1989) (internal quotations omitted). The alleged discriminatory acts must be "related closely enough to constitute a continuing violation." *Id.* at 1480-81. In the employment context, the Supreme Court has held that termination is a discrete act, and that "discrete discriminatory acts are not actionable if time barred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

The crux of plaintiff's claims is that defendants' conduct violated her constitutional right to be free from discrimination based on race, ultimately culminating in her termination from employment in May 2012. (*See, e.g.*, SAC ¶¶ 198, 225, 343, 367, 442, 466, 510, 547, 565, 681, 694, 700, 710, 723, 732, 751, 768, 845). Plaintiff's alleged damages likewise flow from her termination. (*See generally* SAC.) By contrast, the only conduct alleged in the SAC post-May 2012 is limited to plaintiff's conclusory statements that she believes defendants "continued to

---

[12] Defendants also argue that each of these causes of action should be dismissed because the SAC does not contain sufficient facts to state cognizable legal claims. The Court does not reach these arguments because it finds plaintiff's claims time-barred.

15

1  retaliate against her through their actions and inactions in assisting with" the California
2  Department of Industrial Relations Division of Labor Standards and Enforcement investigation
3  and responding to her California Public Records Act ("CPRA") requests.  (SAC ¶ 95.)
4       Even giving plaintiff the benefit of leniency in light of her *pro se* status, the pre-
5  termination and post-termination acts are not plausibly related. *See London v. Coopers &*
6  *Lybrand*, 644 F.2d 811, 816 (9th Cir. 1981) (determining that discharge from employment was a
7  separate act from post discharge conduct for purposes of continuing violation doctrine) (overruled
8  on other grounds).  First, she has not provided any facts to show that defendants engaged in post-
9  termination retaliatory "actions and inactions," and second, she does not allege that her right to
10 information under CPRA was violated prior to her termination. Therefore, the continuing violation
11 doctrine cannot save any of her time-barred claims.
12      **2. Equitable Estoppel**
13      Plaintiff next argues that defendants should be equitably estopped from raising a statute of
14 limitations defense because they fraudulently concealed information that prohibited her from
15 timely bringing her claims. *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1051
16 (9th Cir. 2008) (explaining that equitable estoppel is based on "actions taken by the defendant to
17 prevent a plaintiff filing suit, sometimes referred to as 'fraudulent concealment'") (quoting
18 *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002).  A plaintiff may invoke equitable
19 estoppel "if the defendant takes active steps to prevent the plaintiff from suing in time, such as by
20 misrepresenting or concealing facts necessary to [the plaintiff's] claim." *Coppinger-Martin v.*
21 *Solis, et al.*, 627 F.3d 745, 751 (9th Cir. 2010) (quoting *Santa Maria v. Pac. Bell*, 202 F.3d 1170,
22 1176-77) (internal citations and quotations omitted).  The Ninth Circuit has consistently held that
23 the basis for equitable estoppel cannot be the same as the basis for the underlying discrimination
24 claim. *Coppinger-Martin*, 627 F.3d at 791; *Lukovsky*, 535 F.3d at 1052; *Guerrero v. Gates*, 442
25 F.3d 697, 705-6 (9th Cir. 2003).  Rather, equitable estoppel is appropriate where, for example, a
26 defendant informs a plaintiff they will not plead a statute of limitations defense and then does, or
27 where a defendant provides plaintiff with forged documents seeming to contradict their claim.
28 *Lukovsky*, 535 F.3d at 1052 (quoting with approval *Cada v. Baxter Healthcare Corp.*, 920 F.2d

446, 450 (7th Cir. 1990).

In support of her argument, plaintiff contends that defendants "engaged in actions constituting fraudulent concealment, where they deliberately hid, suppressed, or did not disclose important facts or situation [sic] that they were legally bound to reveal – all with intent to injure plaintiff." (Oppo. at 25:3-7.) Plaintiff points to two forms of concealment by defendants. First, she asserts that defendants' alleged failure to disclose that her employment was in "limbo" between February and May 2012 constitutes fraudulent concealment. Regardless of whether defendants actually concealed relevant information from plaintiff during this time, this delay cannot impact an equitable estoppel analysis. Defendants concede that the limitations period did not begin to run until plaintiff's termination in May 2012, when plaintiff admits she learned of her termination, and any alleged concealment concluded. This argument is therefore misplaced.

Second, plaintiff implores the Court to find that defendants' alleged role in UCSF's failure to respond to plaintiff's CPRA requests requires they be equitably estopped from asserting a statute of limitations defense. Plaintiff, however, fails to allege any particular information she was missing, and of which she later became aware, that precluded her from earlier filing suit against defendants. Rather, plaintiff says that the purpose of these CPRA requests was to gather evidence relevant to her whistleblower, discrimination, harassment, and retaliation allegations for both her pre-termination internal UCSF complaint and post-termination complaint with the California Department of Industrial Relations. Plaintiff was therefore unquestionably aware of her claims despite any concealed information because she was, in fact, actively pursuing the same claims administratively. Thus, equitable estoppel cannot apply here.

### 3. Equitable Tolling of the Limitations Periods

Finally, plaintiff asserts that equitable tolling should save her claims otherwise barred by the applicable statutes of limitation. Equitable tolling effectively pauses the limitations period "during the time consumed by the administrative proceeding." *McDonald v. Antelope Valley Community College District*, 45 Cal.4th 88, 101 (2008) (quoting *Elkins v. Derby*, 12 Cal.3d 410, 414 (1974)). Equitable tolling extends to both voluntary and involuntary administrative procedures so long as the "defendant is not prejudiced thereby." *Id.* at 102.

Plaintiff first contends that the UCSF administrative processes she pursued related to her various grievances from August 2011 through May 2012[13] collectively tolled the applicable statutes of limitation during that time.  Equitable tolling, though, operates to extend the time in which a plaintiff may file suit where the plaintiff pursues an administrative process during the limitations period, thereby prolonging it.  The parties agree that the limitations period did not begin to run until May 9, 2012 – the date of plaintiff's termination from employment.  It is not possible then for administrative processes that concluded prior to the start of the limitations period to toll (*i.e.* pause) the running of the two year period.  In other words, only administrative processes pursued during the period can equitably toll the period from running.

In that regard, plaintiff also argues that the whistleblowing complaints she filed with UCSF and the University of California Office of the President's (UCOP) Ethics Division beginning "on or about July 2013" should toll the limitations period.  (Oppo. at 29:10-24.)  While plaintiff does not specify which of her causes of action should not be time-barred because she was pursuing these administrative remedies, this argument can logically only apply to the whistleblower claim under California Labor Code section 1102.5.  *See Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691, 695 (9th Cir. 2003) (equitable tolling is only available where the claims concern the same wrong).  Not only did defendants not move to dismiss this claim on statute of limitations grounds, but plaintiff also consented to dismissal of her whistleblower claim.  The pendency of plaintiff's administrative whistleblowing complaints, therefore, does not toll any of the limitations periods at issue in this motion.

Accordingly, the Court finds that a majority of plaintiff's claims are barred by the applicable statutes of limitation, specifically plaintiff's Third, Fourth, Seventh, Eighth, Eleventh, Twelfth, Fourteenth, Sixteenth, Seventeenth, Twenty-Fourth, Twenty-Fifth, Twenty-Sixth, Twenty-Seventh, Twenty-Eighth, Twenty-Ninth, Thirtieth, Thirty-First, Thirty-Second, and

---

[13] Plaintiff's opposition states in some places that the administrative process ran through March 2012 and in other places that it ran through May 2012. (*Cf.* Oppo. at 29 and Oppo at 31.)  Whether UCSF's administrative process ended in March or May 2012 is not dispositive of the Court's analysis for the reasons described herein.  In light of the plaintiff's *pro se* status, however, the Court gives her the benefit of leniency and uses the later date of May 2012.

18

Thirty-Seventh Causes of Action. The motion as to those claims is **GRANTED**.

IV. **CONCLUSION**

1. Dismissal Uncontested: Defendants' motion to dismiss the First, Fifth, Ninth, Thirteenth, Fifteenth, Twenty-Second, Twenty-Third, Thirty-Fifth, Thirty-Sixth and Thirty-Seventh (as to the individual defendants) Causes of Action is **GRANTED**.

2. Sovereign Immunity (First 36 Causes of Action): Defendants' motion to dismiss on sovereign immunity grounds is **DENIED**.

3. Qualified Immunity (First 36 Causes of Action): Defendants' motion to dismiss on qualified immunity grounds is **DENIED** with respect to the Second, Sixth, Tenth, and Nineteenth Causes of Action. The denial is **WITHOUT PREJUDICE** to raising a qualified immunity defense at a later stage.

4. Misrepresentation (Eighteenth Cause of Action): Defendant's motion to dismiss this claim is **GRANTED**.

5. Conspiracy (Thirty-Third and Thirty-Fourth Causes of Action): Defendants' motion to dismiss the conspiracy claims is **GRANTED.**

6. Statute of Limitations Defense: Defendants' motion to dismiss the Third, Fourth, Seventh, Eighth, Eleventh, Twelfth, Fourteenth, Sixteenth, Seventeenth, Twenty-Fourth, Twenty-Fifth, Twenty-Sixth, Twenty-Seventh, Twenty-Eighth, Twenty-Ninth, Thirtieth, Thirty-First, Thirty-Second, and Thirty-Seventh Causes of Action is **GRANTED**.

As a result of this Order, the following claims remain: (i) retaliation in violation of 42 U.S.C. section 1981 against all individual defendants (Second, Sixth, and Tenth Causes of Action); and (ii) hostile work environment under California Government Code section 12490(h)(1) against defendant Peterson (Nineteenth Cause of Action).

Defendants shall file a responsive pleading within 14 days of the date of this Order. The Court sets an initial case management conference for **October 19, 2015** at 2:00 p.m, at the United States District Court for the Northern District of California, Ronald V. Dellums Federal Building,

Oakland in Courtroom 1.  The parties shall file a joint case management conference statement seven days in advance of the case management conference date.  The statement must include all elements requested in the "Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement."

This Order terminates Docket No. 44.

**IT IS SO ORDERED.**

Dated:  August 31, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**